OWATONNA MFG. CO. v. F. B. FARGO & CO.

(Circuit Court, D. Minnesota. February 1, 1899.)

1. PATENTS—SUIT FOR INFRINGEMENT—PARTIES.

While the owner of the title to a patent is for technical reasons a necessary party to any suit for its infringement, where the complainant in such a suit in equity is the owner of the exclusive right to manufacture and sell the patented article in the United States he has all the substantial right to the relief and to the recovery, the owner of the title being only a formally necessary party, who may be brought in by amendment, and the complainant may be permitted to show, by supplemental bill, that he acquired the technical title to the patent immediately after the commencement of the suit, and in such case the fact that the prior owner was not made a party will not defeat the suit.

2. SAME—INFRINGEMENT—COMBINED CHURN AND BUTTER WORKER.

The machine described in the Disbrow patent, No. 490,105, for a combined rotary churn and butter worker, while not the first to embody the idea of combining the two functions, was the first to perform the double function in such satisfactory manner as to bring it into extended and general use, and the patent is entitled to the liberal construction in respect to equivalents accorded to pioneer inventions. It is infringed by a machine different from that described therein only in respect to the gearings, which are either merely changed in form, without any substantial change in device, or in which obvious mechanical equivalents are substituted for some of the parts in the patented machine.

This was a suit in equity by the Owatonna Manufacturing Company against F. B. Fargo & Co. for alleged infringement of a patent.

Paul & Hawley, for complainants.
Benedict & Morsell, for defendants.

LOCHREN, District Judge. The complainant, a Minnesota corporation doing business at Owatonna, in that state, brings this suit to restrain the defendant, a Wisconsin corporation, from infringing patent No. 490,105, issued January 17, 1893, to Reuben B. Disbrow and Darius W. Payne for combined churn and butter worker, and to recover damages for past infringement. The defendant, be-

fore answer, moved to have the service of the subpœna set aside and vacated, on the alleged ground that it was a corporation and citizen of the state of Wisconsin, having no business, place of business, or agent in the state of Minnesota. On the showing made then, the motion was overruled, but, on the evidence taken in the cause, the defendant on the hearing renews the same objection to the jurisdiction of this court. The defendant, as stated, is a Wisconsin corporation, having its principal place of business and its manufactory for churns and dairy machinery and implements at Lake Mills, in that state. It is admitted that for a considerable time prior to December 22, 1896, it kept a store for the sale of its manufactured articles, and also dairy supplies manufactured by others, which it also dealt in, at Nos. 32 and 34 East Fairfield avenue, in St. Paul, Minn., and that this store in St. Paul was advertised by defendant as its branch house, and that C. E. Frink was the manager, and J. L. Crump the assistant manager, of that store or branch house. The evidence shows that about December 22, 1896, the principal officers and stockholders of the defendant formed a corporation under the general laws of the state of Minnesota, having the same name as the defendant, and became large stockholders thereof, taking in also, as stockholders, the said J. L. Crump and his wife, who is the daughter of the vice president of the defendant, but no other persons not officers and stockholders of defendant; and that this Minnesota corporation has ever since continued to carry on the same business at the same place in St. Paul, under the same manager and assistant manager, with no change in signs, circulars, or advertisements, making periodical detailed accounts of the business of the St. Paul house to the defendant, which has continued to advertise the St. Paul house as the branch house of defendant, as before said Minnesota corporation was formed. The whole evidence is persuasive that the business of the St. Paul house is still in fact the business of the defendant, and that the Minnesota corporation is the agent of the defendant, as are also its manager and assistant manager. The service of the subpœna was therefore sufficient.

The defendant urges that the suit should be dismissed, because when it was commenced the title to the patent was not in the complainant, but in the Disbrow Manufacturing Company. Disbrow and Payne, the patentees, by contract in writing, on October 2, 1893, granted to the complainant the exclusive right to manufacture and sell throughout the United States combined churns and butter workers, under said patent 490,105. As this writing did not by its terms convey to complainant the exclusive right to use the patented invention, it did not, under the decision in Waterman v. Mackenzie, 138 U. S. 255, 11 Sup. Ct. 334, amount to a transfer of the title to the patent, and therefore must be classified as a license, leaving the holder of the title a necessary party to any suit for infringement of the patent for technical reasons, although, in every case of infringement by the unauthorized manufacture or sale of the patented article, the complainant alone would, in equity, be entitled to all damages recovered. The complainant could even maintain an

action against the owner of the patent, should he, after the grant of such exclusive license, manufacture and sell such patented article in the United States; and in the case of suit against other infringers, if the owner of the patent refused to join as complainant, he might be brought into the suit by being joined as defendant.

In a suit in equity, where the complainant has all the substantial right to the relief and to the recovery, if he omits to join a technically necessary, but really formal, party, he will be allowed to bring such party in by amendment; and in this case, as the complainant actually acquired the technical title to the patent just after the suit was begun, it was properly allowed to allege that fact by supplemental bill. There was no longer any reason to make the prior holder of the title to the patent a party, as, even in respect to the past infringements alleged, the equitable and substantial right of recovery was in the complainant alone.

In respect to the validity and scope of the patent, and to the charge of infringement, it is true that, prior to this Disbrow patent, rotatory cylindrical churns, with slats or flights on the inner surface of the periphery, to agitate the cream, were in use, and in some cases were so arranged that after the churning was done, and the buttermilk drawn off, rollers could be introduced within the churn for kneading and working the butter, brought up by the slats and dropped upon the rollers by the rotary movement of the churn. The Disbrow churn, however, seems to have been the first which without removing any of the parts from the machine, or introducing into it any further or other appliances, could be changed in a moment, by a shift of the gearing, effected by the movement of a lever, from a successful churn to a successful and satisfactory butter worker. The value of the invention appears to have been promptly recognized by dairymen, and I think the patent must be regarded as entitled to that liberal construction in respect to equivalents which are accorded to patents for what are called "pioneer inventions." Although prior inventions disclose the conception of the idea of combined churns and butter workers, and the construction of such machines, of varying utility and convenience, the Disbrow machine differed from all the others, and the evidence fairly shows that it was the first machine to perform this double function in such satisfactory manner as to bring it into extended and general use.

Without attempting any technically accurate description, it may suffice to say that the Disbrow machine, as described in the patent owned by complainant, has a cylindrical rotatable drum, the two heads of which have openings in the centers, and are supported by metal spiders fastened to the outside of the rims of the heads around the openings and journals upon the frame at each end, outside the drum. The openings in the heads are closed by independent heads or disks, on the inner side, through which pass the journals of two rollers, side by side, to crossheads outside the heads of the cylinder at each end; which journals are thrown out of gear by a lever movement when the disks are clamped to the heads, to close the openings in churning. Then the rollers revolve with the

cylinder in churning, and perform no function unless in slightly aiding in the agitation of the cream. When the churning is completed, the buttermilk is drawn off, the disks covering the openings in the heads are unclamped, and the journals of the rollers, by a slight movement endwise, by means of a small lever, are slipped into gear, and no longer revolve with the cylinder, but, lying side by side near the center of the machine; turn towards each other, each on its own journal, and squeeze and knead the butter as it is carried up by the slats of the revolving cylinder, to drop by gravity upon the rollers, when, after passing between them and falling to the bottom of the cylinder, it is again carried up and dropped upon the rollers as before, and this process continued until the butter is sufficiently worked. The evidence shows that the complainant, almost immediately after beginning the construction of these machines, adopted a mechanical change from the form shown in the patent, by bringing the rear crosshead upon which the journals of the rollers rest at that end within the cylinder, and, in the stead of the loose head or disk at that end, a shaft to support that crosshead passes in a collar or gudgeon through the center of the rear head of the cylinder, supporting that crosshead, and the ends of the rollers resting thereon, upon the frame, outside the cylinder. This device is plainly the mechanical equivalent of that shown and described in the patent, and performs the same functions in the same way.

The defendant, in its earlier construction of combined churns and butter workers, of the kind of which the so-called "Kilkenny Machine" is a sample, copied, with immaterial variations, the machine, with two open heads, described in the Disbrow patent. In its later construction of the kind called its "Style A Machine," it copied, with like immaterial variations, the machine as made by the complainant, with the rear crossheads within the cylinder, as above described. The differences between the defendant's machines and those of the complainant, in each of these instances, are in respect to the gearings, and consist in the adoption of obvious mechanical equivalents or mere changes in form, in respect to which any skilled mechanic can vary the manner and form indefinitely, without any substantial change in the devices. The intent of the defendant to infringe the Disbrow patent, and use the patented invention in disregard of complainant's rights, is evidenced, as I think, by its procuring the transfer to it of the technical title to that patent, subject to complainant's rights, in connection with its employment of Disbrow, the patentee, and Brown, the mechanic who had constructed for Disbrow his first experimental machine, and by its procuring of one of complainant's machines for use in making patterns, and also by its attempts, with the assistance of Disbrow and Brown, to overthrow the Disbrow patent, upon the claim, which it failed to sustain, that Brown, and not Disbrow, was the real inventor. Let decree be entered affirming the validity of said patent No. 490,105, and complainant's title thereto, and adjudging that the defendant has infringed the same, and that complainant is entitled to recover of defendant the gains

and profits it has received from such infringement, and awarding a perpetual injunction, and an accounting of such gains and profits as prayed in the bill and costs.